WHITTON<br>v.<br>JONES.

## HUGHES v. BOYCE.

Where an attorney at law consents to release a judicial mortgage in favor of his client in consideration of a payment of a part of the debt, and of having a certain note, made by a third person, placed in his hands, as collateral security, it being stated in the receipt given by him, " that the proceeds of the note are to be first applied to satisfy the remainder due on said judgment, and the balance to be paid over to the party depositing it," he will not be liable, in the absence of any proof of an undertaking on his part to put the note in suit in case of non-payment at maturity, for any injury which the owner of the note may sustain by the failure to sue on it in time.

APPEAL from the District Court of Natchitoches, *King*, J. *O. N. Ogden*, for the appellant. *Elgee*, for the defendant. The judgment of the court was pronounced by

Slidell, J. *Greeves* had obtained a judgment against *Bailey* ; upon execution, certain property had been sold, and *Bailey* being himself the purchaser, gave his twelve-months' bond, which matured on the 27th June, 1837. On the 3d June, 1837, *Boyce*, who was *Greeves*' attorney of record, gave *Hughes*, the agent of *Bailey*, a receipt in the following words :

" Dolls. 1500.                              " New Orleans, June 3d, 1837.

" Rec'd from Mr. *D. M. Hughes*, of New Orleans, fifteen hundred dollars, in part payment of a twelve-months' bond in the case of *John G. Greeves* agaist *L. Bailey*, being a judgment obtained in the District Court of the parish of Rapides. And it is, in consequence of said payment, agreed by me that I will release the judicial mortgage in consequence of said judgment and the said bond, on having placed in my hands a note made by *S. E. Cuny* in favor of *P. M. Cuny*, dated 15th November, 1836, for the sum of two thousand one hundred and sixteen dollars sixty-six and two-thirds cents, bearing interest from date, if not paid on the first of January, 1838 (the time the same will be due), proceeds of said note to be first applied to satisfy the remainder due on said judgment and twelve-months' bond, and the remainder to be paid over to the said *Hughes*.                   H. Boyce, Attorney for *J. G. Greeves*."

The plaintiff, in his petition, sets forth this receipt; alleges that the note of *Cuny* was perfectly good at its maturity, and might have been collected without difficulty, if proper measures had been taken ; that *Boyce* neglected to take any proceedings upon it until the parties had become insolvent, so that the plain-

tiff has experienced a total loss of that portion which was to have been paid over to him according to the terms of the receipt. He asks judgment for $988 24, and interest, the portion remaining after payment of judgment against *Bailey*. There was judgment in favor of the defendant, and *Hughes* has appealed.

The case turns upon the enquiry whether *Boyce* bound himself personally to collect the note thus placed in his hands, and if so, whether that undertaking has been violated? Before considering the nature and effect of the receipt, it is proper to notice certain acts of the parties which indicate the interpretation they have themselves put upon it, and some other circumstances material to the proper consideration of the case. Although the petition of *Hughes* would indicate that he relied upon the receipt to show his interest in the proceeds of the note as having been simultaneous with the execution of the receipt, yet it is conclusively shown by his answers to interrogatories that, at the date of the receipt, he was merely the agent of *Bailey* ; that the receipt was taken solely for *Bailey's* benefit; and that his interest was only acquired by a transfer from *Bailey*, about twelve or fifteen months before the institution of the present action, that is to say, some time in the fall of 1843.

On the 4th January, 1838, *Cuny's* note, which *Boyce* had deposited in bank for collection, was protested, and the endorser was notified. In January, 1839, an execution was issued on the twelve-months' bond, and soon after *Bailey* obtained an injunction. He alleges, under oath, in his petition that *Boyce*, as the attorney of *Greeves*, had released the mortgages created by the judgment and the bond, upon the deposit of the note of *Cuny* "as collateral security," and that *Greeves* could not lawfully proceed in his execution without placing this collateral in the sheriff's hands, so that he might have it in his power to deliver it when sale should be made and the debt paid. The prayer was, that the sheriff be enjoined from proceeding in the execution of the *fieri facias*, until *Boyce* shall deliver the note to the sheriff or bring it into court. The pretension that *Boyce* had undertaken to collect the note and had been guilty of *laches*, was not set up by *Bailey*, in that cause, until May, 1840. In March, 1839, *Boyce* gave the note of *Cuny* to *Waters*, the attorney of record of *Bailey*, in the injunction suit, a fact which was communicated to *Bailey*. *Boyce*, some months afterwards, asked a written receipt from *Waters*, who refused to give it, and insisted that he held the note for *Boyce's* benefit; he acknowledges, however, that *Boyce* did not tell him not to deliver it to *Bailey*. *Waters* also testifies that the object of *Bailey* in obtaining the injunction was, to obtain temporary delay for the return of *Boyce*, and that he expected, after his return, to procure a draft from *Cuny* on account of it, and to a sufficient amount to cover *Greeve's* claim. The note remained in *Waters'* possession until it was about to be prescribed, when *Waters* suggested to the counsel of both parties that a suit should be brought upon it, without prejudice to either party, which was accordingly done. It is also shown that the note might probably have been collected in 1839, and perhaps up to 1840; but that, after that date, the claim became desperate. *Boyce* was appointed district judge in 1834, and continued such down to the trial of the cause.

Such are the material facts in this case ; and upon this state of facts we are of opinion, that the case is clearly in favor of the defendant. Not only was the receipt of *Boyce* an act done as the attorney of *Greeves*, but we look in vain either in the terms of the receipt, or the acts of *Bailey* himself as indicative of his interpretation of that instrument, for any support of the allegation that

*Boyce* undertook to put the note in suit. It was a collateral security placed in the hands of *Greeves'* attorney, to be applied, if paid, as stated in the receipt. There was no obligation either, on the part of *Greeves*, or *Boyce*, to put the note in suit, at least without a demand to that effect, and a tender of a sufficient sum towards the costs of an action. The note was in law at the disposal of *Bailey* upon his paying the debt, as collateral security for which it was given. *Bailey* has, in fact, enjoyed a greater control over the note than he was entitled to, by its delivery to *Waters*, his attorney; and if any loss has been incurred, it has been the result of his own want of punctuality, and his own *laches*.

*Hughes* can of course stand in no better position than *Bailey*, his assignor, the principal facts which we have stated having occurred anterior to the assignment.　　*Judgment affirmed.*